Good afternoon. What we're trying to do this afternoon is, in effect, treat this as a case management session with regard to the appeals that we have taken by skipping the district court. So, what I'll ask counsel to deal with, we're going to have, is everybody agreed on the record? Is there anything to be added? What are the key issues that need to be resolved? Can those issues be done in one brief or two briefs for a particular side? What's the word count that we should have for the briefs? And I should tell you at the outset that we are inclined to stick with the 14,000 word limit. And then finally, some comments with regard to oral argument. So, who wants to go first? That is counsel or who's the appellant? Good afternoon, Your Honor. James Bromley of Cleary Gottlieb, Bistine and Hamilton on behalf of Nortel Networks Incorporated. We are appellants in this matter. I would like to, if I could, Your Honor, before we get to your list, give you a brief update as to certain circumstances that exist. I think as Your Honors are aware, this was a trial that took place simultaneously both in Delaware and in Toronto. There have been independent appeals that have been taken both here in the United States as well as in Canada. The status of the appeals in Canada are that a motion for leave to appeal to the Ontario Court of Appeals was denied and there was a motion for leave to appeal taken to the Supreme Court of Canada. That's still pending? Yes, Your Honor, but there is a development, so I'd like to just inform you because I think it should help inform the court as to the management of the matter. About two weeks ago, all of the parties to the appeals in Canada approached the Supreme Court of Canada with a stipulation asking that briefing in the appellate process before the Supreme Court of Canada be pushed out. That briefing, which was due in early September, be pushed out to November 30th and the request was made on the premise that the parties have been engaged in an ongoing mediation process. I think the court may be aware of that. It is being supervised by former Judge Joseph Farnon and all the parties that are present have been participating in that mediation in one way or another for the better part of eight or nine months. It's good that the mediation is continuing and in fact, as we sat together just a few weeks ago, the idea of having a substantial amount of briefing in Canada with respect to the appellate process there was to this group an obstacle to the continuation of the mediation and the opportunity to try to settle the case. A stipulation was signed and a request was made to the Supreme Court of Canada to adjourn out or provide a stay of the briefing schedule and that request was granted by the Supreme Court of Canada. Right now, the briefing in Canada is being held in abeyance through November 30th. There is the ability of the various parties, anyone who is an appellant up there or an appellee, has the right to deliver what is known as, under the document, an impasse notice, something only a lawyer could have thought of. If we deliver, anyone delivers an impasse notice, then the clock starts running with 30 days to the next filing. No notice has been delivered. In advance of this hearing or conference, Your Honor, the parties again sat down to talk about what we should say to you. The view is that from the perspective of the parties, it would be a mistake at this point to start the briefing with respect to the Third Circuit appeal. We recognize that that is not the normal course that would be taken, but we do think that there is some basis to see this being a fairly unique situation. The parties continue to be meeting with each other. There is progress being made. Our hope is that we will be able to resolve this without having the need for this Court to rule or for the Supreme Court of Canada to rule. We are pragmatists. We recognize that that may not be the case, but we wouldn't be standing here today in open court telling you that we thought additional time was needed unless we thought it would be worthwhile. Now, with that, Your Honors, in particular, we talked about a specific timeline, which is that we would, in effect, put everything on hold in the Third Circuit until October 7th, which is roughly a month from today. And we believe that by October 7th, we will either have a resolution or we will not. And if we will not, then we will be able to move forward. We have had specific conversations with counsel to the Canadian Monitor about a similar type of stipulation that addresses a very specific issue that faces us here in the Third Circuit, which is the ability of parties to move for an expedition of the appeal. That process would, under local rule, require to be made by Friday of this week, the 9th. And so we have discussed the framework of the stipulation, and I think we're in substantial agreement on that form, which would allow that right to be, in effect, preserved, where the parties would agree that if the Canadian Monitor or any other party, in fact, sought to move to expedite this appeal, and they did so after the 9th of September, that no party would then argue that the request was untimely and therefore should be denied solely on timeliness grounds. So that, I think, are the two bookends of the situation that we face ourselves with. You know, it has been a long process, there's no question, and the parties have been working hard to try to resolve it. We don't have a resolution yet, but we do believe that if the Court does grant us this additional time, that it will be put to good use. And we're cognizant of the fact that when we went to the Supreme Court of Canada, we talked about an extension through November 30th, and that when we're here in front of the Third Circuit, we're talking about an extension through October 7th. That is because our view is that the issues have narrowed and we have a sense of whether it will happen or not happen, and it will be something that is in the relative near term. And so our view, Your Honours, is that putting everything off for a month would be a prudent and appropriate thing to do under the circumstances to allow the parties that one last push, with the help of Judge Farnan, to try to get this resolved peacefully, so to speak, if you can say that after so long. But, you know, obviously it's in the discretion of the Court to tell us what we should do. And with that, I'm happy to start talking about the other issues, but I wanted to put that out on the table. Thank you. Thank you for the report. You addressed one of the subjects that the two of us were interested in pursuing, which was whether further discussions among the parties to sort of dictate their own destiny were worthwhile, and I'm happy to hear that you're all working together towards that, so you can check that off my list. Obviously, our goal here is to figure out the most efficient way to get the issues in front of the Court at the appropriate time. This is, in my view, this type of situation is the kind of thing you'd like the parties to call on their own. You're at the point in this case, as you know, that you should be dictating your own destiny, I would think. But that's your judgment, and together with Judge Farnan and others, I'm sure you'll hopefully reach that goal. But if you don't, this Court has granted that unusual request to allow you to bypass the very able district court judge who would have, I'm sure, studied all of your issues and come to a conclusion that he thought was consistent with the law and the facts. By us granting this petition and convening today's conference, our goal is, if you're unable to decide things on your own, to get it in front of the panel in the most efficient and smartest way. More is not necessarily better. We've had a chance, obviously, to peruse very generally what you submitted to the district court, and neither of us have a view on who's right or who's wrong. We simply can see significant overlap, and we're looking to find a way, if we have to decide this, to get it in front of the panel efficiently. And since you're also now asking for an expedited appeal, that even more will cause us to facilitate, as we can, an efficient presentation of the issues that you have that you really need decided. Not all issues are equal. You all would know the ones most important. But those are my preliminary thoughts, Judge. It's the same here. The idea is, I remember one time I was at a conference with Judge Fuentes, and he said that if you want me to read carefully, make it short. If you want me to skim, make it long. And if there's going to be umpty-ump briefs on the same issue, and there's much overlap, you're not helping the cause. And so the idea is, assuming, and I hope we don't get there. I have no problem giving it until October 7th to let us know. But if we get to October 8th, rather than having another case management conference, let's try to agree today, or very shortly after today, as to what are the key issues. Is it possible that they can be briefed in one brief? And I realize that's hard. I've done it in bankruptcy. I remember in the Continental case, it was 59 aircraft financiers, and it was very tough. We had two of us with the power of the pencil, and even then it was tough. But it can be done. And it certainly is a significant help to us. So I guess at the outset, assume that you've got until October 7th to let us know. Has there been agreement so far as to, is there any dispute as to what should be in the record? There has been no dispute, Your Honor. And when I look at the issues, having read Judge Gross's comprehensive opinion, it looks as if there, to me, there's a lot of issues. There's probably, as I put it down, maybe five sort of general ones. It's obviously the allocation. What do you, in theory, do you use with regards to the allocation, be it ownership or revenues or contribution? Does the court have the authority to make an equitable allocation? If it has to have the authority, as I said, what do you use? Is there what is being proposed? Is it a sub silencio, substantive consolidation? Is what is being proposed a sub rosa plan? And whether, I guess, there's been a violation of due process. What other big issues are there besides those five general categories? Well, Your Honor, from the perspective of the U.S. debtors, and I think on this I can also speak for those who are affiliated with us in the case, so that would be the bondholders and the UCC, the PBGC, and the trade. I think of those issues, I think you've hit spot on the five main issues. Certainly, it's our view that there's some overlap between them, so substantive consolidation and sub rosa plan have certain elements that are common. The authority and allocation have certain elements that are common. And I think the violation of due process probably trails in terms of importance. So, you know, in terms of what we have been talking about from our side of the table, it's largely been kind of the five that you listed, one and two kind of together, and three and four together with five, something that I think our view currently is that that is not something that we would press going forward. So what would you not press going forward? The violation of due process. Okay. I think, Your Honor, look, if you had to put a bullseye on this, we think it's Owens-Corning and substantive consolidation. Everything kind of leads to that. I think the other issues are ones that are important, but, you know, from many respects, that's kind of the focus. We have not had an opportunity to sit down with our colleagues on the other side of the aisle to go through the issues, but I suspect that they're probably similar in the view. The allocation theories are, you know, really in terms of ownership, and ownership is a term that is used in both camps, so to speak. You can't allocate things that we own, and you can't sell things that we own with snowballs going across from either side. But, frankly, it's the same issue. It's just different sides of the issue. In terms of simplifying these things, Your Honor, there has been a suggestion that we simply rely on the papers below, and I think our view has matured to the extent that our view is that does not make sense. First of all, it would be hard to figure out which ones to rely on. They're so voluminous. I think that was one of Chief Judge Stark's main problems, besides the fact he's extremely busy, and just he was kind of overwhelmed with all of the various overlap that he saw. We appreciate that, Your Honors. So, in terms of word count, to kind of skip to that point, at least from our side, we're fine with the limitations and the rules. In terms of one or two briefs, I think we would suggest that we proceed normally rather than one brief. I have the opportunity for reply. And there are a lot of parties in the room, but there really are only two sides of the story. And so our view would be that we work as closely as possible with those on our side of the aisle to make sure that the issues are not duplicative. You don't have several briefs that say this and this and this about Owens Corning and that and that and that about allocation, that they are – that you have – that the court would have the opportunity to read one set of papers in effect. It might not be one brief, but it – Well, what we were thinking about was a single brief by the appellants and a single brief by the appellees. And I realize there's also cross-appellants on some issues. Right. But nonetheless, I mean, the idea being if you've got eight – you know, I counted, what, 12 different sets of counsel, 16 firms and whatnot. The – or actually more than that. To what extent can you on these, what are now four major areas of dispute, to what extent can you have one brief for an appellant on the opening brief and, of course, reply rather than two or three or four or five? That's a very good question, Your Honor. And I think the fact is that we have used a similar process in Canada on prior appellate issues. I really don't think that it would be difficult to do that. The parties have, you know, tried the case together, doing a tag-team exercise with witnesses and issues. At least from our perspective, I think it would be achievable. Obviously, I haven't talked with everybody yet, but I appreciate the – I appreciate having stood in front of Judge Stark and seen the piles. And when a question was asked, you could tell that the first question was, which pile? Hold on a second. That's not what we want here. We want this to be clear and focused if it has to be argued and right on point. That's – the idea of having too much material here, I think, is something that we very firmly agree with. How close are you to being able to tell us whether you can consolidate the issues into one or no more than two briefs? I would say a week, just simply because of the holiday weekend and everybody's finally back together. I would, to be safe, give it a week. And then once you have that, is a 14,000-page word count, does that work? I would like to have the opportunity to consult. The preliminary conversations, I think, have been that that should work, but I think that was not premised on a single brief, and so I would like the opportunity to consult. I've said this before a number of times. The best legal writing that I see are petitions for rehearing and back before our court because you're limited to 15 pages, or petitions for social right to the U.S. Supreme Court. Once again, you have a finite number of pages. It can be done, and it's highly effective when you have such good counsel as we have here in this courtroom today. I know a number of you I go back a long way with, and so I know what you can do. So let us know, but also within the week. I will tell you that oral argument with regard to this matter, if we get there, if it's not resolved, it probably will be a half an hour per side. You can divide it up any way you want. No two people can speak on the same issue. Now, anyone who knows me knows that I never abide by the time limits. We always end up going over. I still remember a case a few years ago called Combustion Engineering where we started at, unfortunately, 930 in the morning and finished at 545. I don't think that's going to happen here.  And only at the discretion of panel members will it go over at the time. Understood, Your Honor. Anybody else have anything else to add? If I may briefly, Your Honor. Jacob Holtman of Allen & Overy on behalf of Ernst & Young, the Monitor and Canadian Debtors. We share Mr. Bromley's view that settlement discussions have been progressing and that allowing us the month will allow those discussions to either progress or not. We share Mr. Bromley's view also that there are a number of issues that we think might simply be managed in a single brief. So the question of the court's authority, the question of the bankruptcy issues, the sub-con and sub-rosa issue, due process, we think those are issues that can fairly be handled in a single brief. When it gets to the question of allocation, we think that's a far more complex issue because you don't just have two sides pointing in opposite directions. You have multiple sides pointing in multiple directions. You have different theories. And there are different theories. There's Ontario law under the ownership theory. There's U.S. law with respect to contribution. There are equitable principles. We think in that particular area, having a single brief is going to be important. No, I understand that from Judge Gross's. Beyond that, Your Honor, we do share the general view, which is that anything we can do to move this along expeditiously and efficiently would be good. We haven't landed on the spot with respect to the question of whether using the prior briefs would be beneficial to the court. Even if the prior briefs are relied on by the court, we do think it would be beneficial to have the parties at least put in a single view, a single argument to the court and a single brief that meets the requirements of this court. Yeah, I don't think that the intention, and Judge Ambrose, you can certainly jump in, was that we were going to go back, the panel was going to go back and look at the briefs as if we were sitting in the district court, no disrespect at all meant. When we saw the petition and saw what Judge Stark was faced with, our inclination was we need to bring some order to this so you can get what you want, which is a resolution. And so if there is any inclination that all you would do is just change the color of the cover sheets and send it our way, that's not what we have in mind. As I mentioned already, we are looking for single briefs. Now, I do have a question about the allocation concern, but before I do that, let me just ask Judge Ambrose if I'm speaking correctly for us. Okay. On this issue of the allocation where you talk about that might require a different briefing, can you give me some examples of how you would see this play out? Would it be a particular entity that thinks they're entitled to a portion, would do a submission, set forth their position, something like that? Absolutely, Your Honor. It goes to the question of the contingent cross appeals. So on the appeals, on whether Judge Gross was correct, I think the single brief might be feasible. When we get to the contingent cross appeals where you have the AMEA debtors arguing for contribution theory, you have the U.S. essentially arguing for the revenue-slash-ownership theory, and you have the Canadian debtors arguing for ownership theory under Ontario law. I think in that particular area, each party is going to need its own voice to make that argument because at the very same time that I am supporting the ownership theory and while I am joined with the AMEA debtors with respect to supporting Judge Gross' decision, the AMEA debtors and the Canadian debtors are essentially attacking each other with respect to their theory of allocation. And it's for that reason on the contingent cross appeal that we can't be joined up. And we each need to advocate our own theory with respect to the allocation. You use this word contingent cross appeal. Are you saying, are you using the word contingent because the court would only need to reach it if it affirmed? We have the authority, I guess. Only need to reach it if you reverse Judge Gross' opinion. Reverse, okay. If you uphold the opinion, you never get to the contingent cross appeals. Okay, so it's not really contingent. You would file a cross appeal in the formal sense, which is the court may never have to reach it. Absolutely. I see. And in terms of the number of parties, is it three groups that would want to be heard on the allocation theories? It's certainly the Canadian debtors would want to be heard on the ownership theory. The AMEA debtors would want to be heard on the contribution theory on this side of the aisle. On the appellant side of the aisle, they, I think, want to be heard as a group. As a group, and then they would respond to those respective theories? That's my understanding. This may be applying something from my old days, and I don't know if this is doable because I'm not as conversant in all of this. Is there a simple way to present the views almost in the form of a chart where you have, here's the law, this is our position, this is the counter position, so a judge could see it point, counterpoint that way? It's certainly been tried before. It's been tried with Judge Gross. It's been tried at the trial. It was tried with Judge Stark. I don't know that this easily lends itself to a simple chart. I mean, this litigation has gone on seven and a half years for a reason, and it's not just the magnitude of the funds involved. And I completely understand that. Simply, again, looking for your suggestions of a way to get this before the panel in the most efficient way and the easiest way they can do almost the count point, counterpoint so that you don't have which brief was added sort of thing. And I think we can go back again, and with Your Honor's guidance of simplify and direct and efficient and effective, take another crack at trying to be as direct as we can about the allocation theories. It's just on the question of can we get it all into a single brief on each side? With respect to some of the issues on the main appeal, yes. With respect to the contingent cross appeals, I don't believe it can be done. I understand. Okay. Thank you. So I would suggest that, one, you've got until October 7th to let us know if you could do by a week from today, September 14th, as to how you propose to divide up what issues you believe need to be briefed and who will be primarily responsible for those particular issues, and can you abide by the word count that we have in place? If it's broken up as it is, it probably should be pretty easy to do so. But, again, everyone will be better served the more efficient and concise we can be. Do you think the contribution, the allocation briefs that you talked about, that we'll call the cross appeal briefs, do you think they would each require 14,000 words? I don't know that they'd need that extensive length, but I do think that there's two components to them. One, advocating for your own position, and second, responding to the positions of the other parties at the same time. So I don't know how much shorter we can be on that. With respect to the record in connection with that, your adversary was asked about the record. Is the record agreed upon? Is it the same record that we'd be relying upon for these cross appeals? It's exactly the same record, plus the transcript of the argument before Judge Stark. I don't think there's much beyond what we've agreed upon, but the record for both is the same record. And is the record, and we were really trying to just get a sense, when I looked at the district court docket, there were designations by the parties of what the designated record was, and that was just sort of a spot check on the docket. Is it 400 pages? Is it 10,000 pages? It's certainly in excess of 10,000 pages, is my belief. And so you believe that these legal issues are going to require a drilling down on the facts. There's not a stipulated factual record that we could come up with here to do this. You may have different legal theories as to whether ownership or contribution or revenue are the proper barometers for measure, but are you saying that there are fact issues such that the panel would need to weigh in on this very lengthy record? While there are a number of legal issues, there are a good amount of issues that are mixed issues of law and fact, and this is not based on a summary judgment record. It's based on a six-week trial, two jurisdictions, extensive factual submissions, extensive expert testimony on those submissions. I don't think that this is a record that we can avoid, an extensive record. The record is, it may be agreed, but it is extensive. Anything further? No, thank you, Your Honor. Thank you. Garth Wilson on behalf of the Pension Benefit Guarantee Corporation. I don't have a lot that I plan to say, but I just wanted to clarify some things. We stand in a little bit different position from some of the others here. There have been references to settlement discussions, and just as this case involves complexities in the litigation, there are also complexities in the settlement negotiation. And I can foresee a scenario in which it may be that, given October 7th, that not all the parties here who are part of the appeal would be part of an agreement. It might include less than all. But there will be fewer issues on the table. Pardon me? If there is agreement by some but not all, will there be fewer issues on the table? I don't know if I can answer that question. Our issues would probably not go away if we were not part of the settlement. So today we are not opposing this proposal from the U.S. debtors, that there be a pause for the briefing to start to see what happens. But we just wanted to mention that it is a complex negotiation going on, and so we didn't want to have to surprise the court later on by telling the court something that it was not expecting to hear as far as possible outcomes. You mean you don't want us to be surprised if you guys are still asking for some relief? Is that what you're saying? You don't want us to be surprised if there are still parties who haven't resolved the case? Yes. I see. Thank you. By the way, one thing, if we do reach October 7th and there has been no settlement with regard to the mediation talks, I would ask that also the parties suggest a briefing schedule at that time. So we can wait until after October 7th for that, but I understand as of this moment the briefing, if we were to have gone forward now, that it's not on an expedited basis or it is on an expedited basis. Your Honor, it's not yet on an expedited basis. We would need to make the motion on Rule 4.1 to expedite. Right. And I think you said the matching date was September 9th? September 9th is the date for 14 days after. If the settlement discussions don't progress, then 14 days after an impasse is declared, we'll be back to the court and seeking expedite. Do you want to make September 9th, October 7th as well with regard to the request for expedited briefing? We'll be prepared on October 7th if it doesn't result. No, what I'm saying is to make the request at that point for expedited briefing. Yes. Okay, that's fine. Then consider the 9th not a matching date. Thank you, Your Honor. Okay. Your Honor, as if I may just briefly, it's Derek Adler from Hughes Hubbard for the EMEA debtors. And as Mr. Pultman has just suggested, there are really three separate polls that have been in play in this case and actually four major theories about allocation that have been put forward by the various parties. And the briefing process we went through below was very helpful, and I think it's quite correct. I think it's quite correct that we can slim it down and eliminate a lot of the repetition, but I do want to echo what Mr. Pultman said about how the ways in which we approach the allocation issue and respond to each other are almost impossible to work together on, and this is a group that is very good at collaborating. We know each other very well from over the years. So I guess I basically want to make sure that if we can't agree to assign particular allocation issues to particular parties, I want to make sure that we will have an opportunity to explain to you why before you rule on the briefing process, because I think we'll be able to show you why there are issues in which we're in conflict that ought to be presented separately on that. That could be done right around October 7th if you find that there has not been a settlement. But, for example, let's just say that there's the Canadian group espousing the ownership theory of allocation. Do I need more than one brief with regard to why ownership theory is the theory to follow? Probably not. I think that would be integrated with their critique of the other theories and, indeed, with particularly their response to the appellants' arguments, because what we found in trying to coordinate below is that the way the EMEA and Canada respond to the U.S. arguments is quite different and is integrated with their alternative approaches, and that's why we found that we couldn't really collaborate on those issues in a brief. I think that's different for sub-con, sub-rosa plan, some of those other issues you've identified, but on the core allocation issues, the question of the merits of which approach to take are closely integrated, and that's why we had trouble collaborating on that. And I guess I wanted to clarify, when you were talking about the word count, were you talking about maintaining that word count for all appellants across appellees or some division of it or some increase of it based on each of the individual appellants? Well, I think, technically, if you have a cross appeal, your opening brief can be 14,000 words, but to the extent you can make it less or agree that it would be less for a particular cross appeal, it would be all to the good. We will try to make all this as brief as possible. I hear that, and I think it's quite feasible to do that. At the moment, there are this number of separate appeals that haven't yet been consolidated, and I think, technically, the limits would apply in those separate appeals. We all want those to be consolidated, I'm sure, to prevent having to file things on all the different dockets, but to me, those two issues go together as well in terms of preserving the rights of the individual appellants and cross appellees and their individual appeals here as well. And I guess the other question was, when you say who would be responding, was your concept to designate particular parties to address issues or briefs? Let's say you just have the issue, pick an issue, subrosa plan. Only one person argues that this is a subrosa plan. Only one person argues that it's not. Okay, so would that be a joint brief? Presumably that could be a joint brief. Judge Ambrose was referring to oral argument. I'm sorry. In terms of the briefing, yeah, it would be, it's just not helpful to have more than one brief on why this is a substantive consolidation that's not acceptable or why it's a subrosa plan, and only one brief on why it passes muster. That's very helpful, I understand. Or not pass muster. Okay. Thank you. Thank you. Very briefly, Your Honor. Susan Salstein from Skadden Orbs on behalf of NNSA France. Three quick points with respect to NNSA being in a slightly different position than others. I think we are the lone appellant to have made the due process argument. I don't think we're quite yet willing to give that up. We also have an argument concerning the Versailles commercial court's order, which is an issue unique to NNSA. And lastly, we have our theories with respect to valuation that are different from the other appellants. That's not to say we won't all get together and agree, because I do believe we've worked cooperatively and we will do so. I just wanted to let the Court know that there are some differences there that we'll have to resolve in the process. All right. Thank you. Thank you. Thank you. Anything Bondholders Council has to say? Mr. Englert? Roy Englert on behalf of the Ad Hoc Bondholders Group. Really what's already been said on our side covers most of what I would have to say. We do need to discuss among ourselves how we would go about coordinating. We hear Your Honor loud and clear. Your Honor is loud and clear about the need to streamline briefing. There are challenges, as the Court has heard. We can discuss those among ourselves and report back to the Court. I'm personally skeptical that $14,000 can cover all of the main appeal issues. But, again, we hear the Court's desires, and we can discuss that among ourselves. All right. Thank you very much. I would ask that counsel, if you would get together with Rita or the clerk's office afterwards to have a transcript prepared of this case management conference. Thank you, everyone, for showing up today. Much appreciated. Thank you, everyone. Ladies and Gentlemen, this hearing is adjourned until Friday, September 9th, at 7 AM.